UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER HICKS-FIELDS,

Petitioner,

v.

Case Number 22-12274
Honorable David M. Lawson

JAMES CORRIGAN,

Respondent.
_________________________________/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner Christopher Hicks-Fields shot and killed Kyle Dubose during a robbery in front of three eyewitnesses. A Wayne County, Michigan jury convicted him of first-degree felony murder, armed robbery, and firearm offenses. He was sentenced to life in prison for murder and lesser sentences for the other crimes. After his state court appeals were denied, he filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 without the assistance of an attorney. The petitioner contends that his attorney should have raised an insanity defense and asked the court to refer him for a competency evaluation, and he was denied due process when the court did not do that on its own. He also argues that his attorney's performance was constitutionally deficient for several other reasons. The state court addressed each of these claims, reasonably applied governing law that finds its origins in Supreme Court precedents, and rejected them. Because those decisions do not contravene or unreasonably apply federal law, the Court will deny the petition.

I.

The facts of the case as recounted by the Michigan Court of Appeals are straightforward. Hicks-Fields attempted to rob the victim and then shot him to death. The shooting was witnessed

by the victim's sister, Deidre Little, and by Hicks-Fields's accomplices Dea'Marrion O'Neal, and Amari Durham. Little later identified him in a lineup, although the identification was equivocal. All three witnesses testified against Hicks-Fields at trial. *People v. Hicks-Fields*, No. 349365, 2020 WL 7296826, at *1 (Mich. Ct. App. Dec. 10, 2020). The court of appeals affirmed his conviction, *ibid.*, and the Michigan Supreme Court denied leave to appeal, 508 Mich. 952, 964 N.W.2d 798 (2021) (Table).

Hicks-Fields then filed the present petition for a writ of habeas corpus asserting the following grounds:

> I. Was Mr. Hicks-Fields denied due process when he was not referred to the forensic center for evaluation of his competency to stand trial and/or criminal responsibility, and denied effective assistance of counsel when counsel did not request the evaluations, and did not raise an insanity defense.
>
> II. Petitioner was denied his Sixth Amendment right to the effective assistance of counsel where counsel failed to object [to] the highly suggestive pretrial identification procedure used in this case, violating his right to a fair trial.
>
> III. Defendant-appellant was denied the effective assistance of counsel where counsel failed to challenge his confession on the grounds [sic] that it was involuntary.

Pet. at 7, 9, 10, ECF No. 1, PageID.7, 9, 10.

The warden argues that all the habeas claims are procedurally defaulted because Hicks-Fields did not raise them in the trial court and failed to give a good reason for not doing so. The "procedural default" argument is a reference to the rule that the petitioner did not preserve properly some of his claims in state court, and the state court's ruling on that basis is an adequate and independent ground for the denial of relief. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). But the Court finds it unnecessary to address the procedural question, because it is not a jurisdictional bar to review of the merits, *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), and "federal

courts are not required to address a procedural-default issue before deciding against the petitioner on the merits," *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). The procedural defense will not affect the outcome of this case, and it is more efficient to proceed directly to the merits.

II.

Certain provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering a petition for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). The AEDPA provides a "highly deferential standard for evaluating state-court rulings[.]" *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). That means federal courts give the state court "the benefit of the doubt," *ibid.*, applying that "statutorily prescribed deference," *Michael v. Butts*, 59 F.4th 219, 225 (6th Cir. 2023) (citing 28 U.S.C. § 2254(d); *English v. Berghuis*, 900 F.3d 804, 811 (6th Cir. 2018)).

A federal court may grant relief only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the *dicta*, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotation marks and citations omitted). The "holding of a Supreme Court decision is the legal rule or principle [the

court the relies on] to decide a case." *Andrew v. White*, 604 U.S. ---, No. 23-6573, 2025 WL 247502, at *3 (Jan. 21, 2025) (*per curiam*).

"As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review. Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (quotation marks omitted)).

"AEDPA also requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Schriro v. Landrigan*, 550 U.S. 465, 473-74 (2007) (quoting 28 U.S.C. § 2254(e)(1)).

A.

Hicks-Fields's claims embrace two distinct areas of the law. The first deals with the state courts' treatment of his mental status touching on both his competency to stand trial and his criminal responsibility and implicates the Due Process Clause of the Fourteenth Amendment. The second area focuses on his right to the assistance of competent counsel guaranteed by the Sixth Amendment.

Turning to the first issue, Hicks-Fields contends that his due process rights were violated because the trial judge did not order on her own motion that he be evaluated by mental health professionals to determine his competency to stand trial and if he was legally insane at the time of

the offenses. The state court of appeals, reviewing the claim for plain error, held that no due process violation occurred because there was no indication during the proceedings that would have alerted the judge that Hicks-Fields's competence should be questioned. The court acknowledged that the petitioner disclosed a history of mental illness during his presentence interview, but that information did not come to light until after the trial, and his conduct during the trial was unremarkable. *Hicks-Fields*, 2020 WL 7296826, at *2 ("[H]e was mostly silent throughout the trial court proceedings" and "the record does not indicate that defendant had any outbursts."). Defense counsel disclosed during the sentencing hearing that Hicks-Fields "had 'some mental issues,'" but also stated, "'Not that he wasn't able to assist me in his defense.'" *Ibid.*

This decision reasonably applied governing federal law. The court of appeals cited *Drope v. Missouri*, 420 U.S. 162, 177 n.13 (1975), when it decided this issue. *Hicks-Fields*, 2020 WL 7296826, at *1 In that case, the Supreme Court reiterated that "a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." 420 U.S. at 171. The Supreme Court has consistently held that "the criminal trial of an incompetent defendant violates due process." *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996) (citing *Medina v. California*, 505 U.S. 437, 453 (1992); *Drope*, 420 U.S. at 171-172; *Pate v. Robinson*, 383 U.S. 375, 378 (1966)). But the Court has held that a defendant is competent if he "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and . . . he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960).

Criminal defendants generally are presumed to be competent to stand trial. *See Carter v. Bogan*, 900 F.3d 754, 769 n.6 (6th Cir. 2018). However, if at any point "before or during trial

'sufficient doubt' arises about a defendant's competence . . . the trial court should order a competency hearing." *Cowans v. Bagley*, 639 F.3d 241, 247 (6th Cir. 2011) (quoting *Drope*, 420 U.S. at 180).

Hicks-Fields's argument may implicate two aspects of the Due Process Clause. First, if there is reason to question the defendant's competence, he is entitled procedurally to pursue that issue. To find success with that argument, the petitioner must show "that the state trial judge ignored facts raising a 'bona fide doubt' regarding the petitioner's competency to stand trial." *Medina v. Singletary*, 59 F.3d 1095, 1106 (11th Cir. 1995) (citing *Pate v. Robinson*, 383 U.S. 375, 385 (1966), and quoting *James v. Singletary*, 957 F.2d 1562, 1572 n. 15 (11th Cir.1992)). Such evidence might consist of a defendant's irrational behavior, his demeanor at trial or at another court proceeding, and any prior medical opinions on competence to stand trial. One of these factors standing alone may, in some circumstances, be sufficient to trigger a further inquiry into a defendant's mental fitness to stand trial. *Drope*, 420 U.S. at 180. A trial judge is allowed to rely on her own observations of the defendant's comportment and demeanor to determine whether the defendant is competent to stand trial. *Bryson v. Ward*, 187 F.3d 1193, 1201 (10th Cir. 1999).

There is no such evidence in the record that revealed itself to the trial judge before or during the trial. A competency hearing is necessary only when a court has a reason to doubt a defendant's competency to stand trial or to plead guilty. *Godinez v. Moran*, 509 U.S. 389, 401 n.13 (1993). The relevant question is "[w]hether a reasonable judge, situated as was the trial court judge whose failure to conduct an evidentiary hearing is being reviewed, should have experienced doubt with respect to competency to stand trial." *Mackey v. Dutton*, 217 F.3d 399, 413-14 (6th Cir. 2000) (quoting *Williams v. Bordenkircher*, 696 F.2d 464, 467 (6th Cir. 1983). The record indisputably answers this question in the negative.

Hicks-Fields's claim also implicates a substantive right under the Due Process Clause, since, as mentioned earlier, "the criminal trial of an incompetent defendant violates due process." *Cooper*, 517 U.S. at 354. He points to evidence in the record that emerged after trial that suggests that he suffers from mental illness. The argument essentially challenges the court of appeals's determination that he was competent to stand trial in spite of this evidence. Retrospective competency determinations such as that are not favored, but by no means are they prohibited. *See Johnson v. White*, No. 14-117, 2022 WL 3205865, at *22 (E.D. Ky. Aug. 8, 2022) (citing cases). The Sixth Circuit has found "that a retrospective determination [of competency] may satisfy the requirements of due process provided it is based on evidence related to observations made or knowledge possessed at the time of trial." *Cremeans v. Chapleau*, 62 F.3d 167, 169 (6th Cir. 1995), *abrogated on other grounds by Thompson v. Keohane*, 516 U.S. 99, 111 (1995). To challenge that finding, the petitioner "is entitled to no presumption of incompetency and must demonstrate his or her incompetency by a preponderance of the evidence." *Medina v. Singletary*, 59 F.3d 1095, 1106 (11th Cir. 1995) (citations omitted).

The Michigan courts did not find Hicks-Fields incompetent to stand trial. In fact, the court of appeals determined as a matter of fact that there was nothing in the record that would have led to such a conclusion. A state court's "determination of competence is a factual finding, to which deference must be paid." *Filiaggi v. Bagley*, 445 F.3d 851, 858 (6th Cir. 2006) (citing *Thompson v. Keohane*, 516 U.S. 99, 110-11 (1995)).

The evidence that Hicks-Fields offers to support his claim that he was incompetent to stand trial consists of his diagnoses of several mental illnesses including depression, schizophrenia, bipolar disorder, attention deficit/hyperactive disorder, and the assertion that he suffers from auditory hallucinations. However, mental illness by itself does not equate with the incompetency

to stand trial. *See United States v. Davis*, 93 F.3d 1286, 1290 (6th Cir.1996). Depression by itself does not establish a criminal defendant's mental incompetency. *See*, *e.g.*, *Nowak v. Yukins*, 46 F. App'x 257, 259 (6th Cir. 2002). Schizophrenia does not automatically render a defendant incompetent to stand trial. S*ee Mackey*, 217 F.3d at 410-14 (upholding the determination that a habeas petitioner was competent despite an earlier diagnosis of schizophrenia and an affidavit from the defendant's lawyer stating that his client "exhibit[ed] great difficulty in communicating and assisting with his defense."). Bipolar disorder does not render a defendant incompetent to stand trial if the defendant is able to understand his rights and participate in the proceedings. *See United States v. Alfadhili*, 762 F. App'x 264, 268-69 (6th Cir. 2019); s*ee also United States v. Allen*, 665 F. App'x 531, 534 (6th Cir. 2016). A defendant's attention deficit disorder does not render a defendant incompetent to stand trial. *See Slaughter v. Parker*, 187 F. Supp. 2d 755, 788 (W.D. Ky. 2001), *aff'd in part, rev'd in part on other grounds*, 450 F.3d 224 (6th Cir. 2006). The fact that Hicks-Fields may have been having auditory hallucinations does not render him incompetent to stand trial where, as here, there was no showing that he did not understand the proceedings against him or was unable to assist his defense counsel with his defense. *See United States v. Murphy*, 107 F.3d 1199, 1203 (6th Cir. 1997).

Hicks-Fields also argues that his incompetency can be demonstrated by his rejection of a plea bargain offer. But "[e]ven if rejecting a plea agreement were irrational, that alone would not provide the substantial evidence necessary to find that a competency hearing should have been ordered." *United States v. Muniz-Martinez*, 661 F. App'x 900, 901 (9th Cir. 2016).

Hicks-Fields presented no evidence that he was unable to understand the proceedings against him or assist his attorney. There is nothing in the record to indicate that he did not understand the proceedings or responded inappropriately to the judge's questions or to his own

counsel's comments. Significantly, nothing in the record establishes that Hicks-Fields was confused or unable to participate in the proceedings. There is no evidence that he was not in possession of his mental facilities when he went to trial.

The state courts' determination that there was nothing in the record that might provoke a doubt about Hicks-Fields's capacity to understand the proceedings and assist in his defense, or that should have triggered further inquiry into that question, was a reasonable determination of the facts of the case. The state courts' rejection of these mental capacity claims did not contravene or unreasonably apply governing federal law.

B.

Hicks-Fields also argues that he did not receive the assistance of competent counsel at trial in several respects. He says that trial counsel was ineffective by failing to raise an insanity defense because he suffers from mental illness; failing to object to Ms. Little's pretrial identification of him because it was impermissibly suggestive; and failing to move to suppress his statement to the police, because he had invoked his right to counsel. The Michigan Court of Appeals rejected these claims, as discussed further below. The law governing this issue on federal habeas review is well established.

An ineffective assistance of counsel claim has two components. A petitioner must show that counsel's performance was deficient, and that deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance meets the first element when "counsel's representation [falls] below an objective standard of reasonableness." *Id.* at 688. The petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. The Supreme Court has "declined

to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins*, 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 688) (quotation marks omitted). And most relevant here, where the challenged conduct amounts to legitimate trial strategy, habeas courts will not find that counsel performed deficiently. *Robins v. Fortner*, 698 F.3d 317, 337-38 (6th Cir. 2012).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Unless a defendant demonstrates both deficient performance and prejudice, "it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

Success on ineffective assistance of counsel claims is relatively rare, because the *Strickland* standard is "'difficult to meet.'" *White*, 572 U.S. at 419 (quoting *Metrish v. Lancaster*, 569 U.S. 351, 357-58 (2013)). And under AEDPA, obtaining relief under *Strickland* is even more difficult because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (citations and quotation marks omitted). This doubly-deferential standard requires the Court to give "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15 (2013). "[T]he question is not whether counsel's actions were reasonable," but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105.

And under any standard of review, an attorney's performance cannot be deemed deficient because defense counsel did not interpose a meritless objection or file a meritless motion. *Jalowiec v. Bradshaw*, 657 F.3d 293, 321-22 (6th Cir. 2011) (stating that an "attorney is not required to raise a non-meritorious claim" (citing *Wilson v. Mitchell*, 498 F.3d 491, 514-15 (6th Cir. 2007))); *see also Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (indicating that the "[Supreme] Court has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success" to avoid a finding of deficient performance under *Strickland*).

1.

Hicks-Fields's contention that he was denied constitutionally proper representation because his lawyer did not raise an insanity defense fails for two reasons: there was no deficient performance and no prejudice. The Michigan Court of Appeals reasoned that the evidence did not support such a defense — ("[The] defendant's alleged mental illnesses were not made part of the record at trial and defendant's decision to shoot Dubose does not necessarily demonstrate defendant's inability to conform his conduct to the requirements of the law. Defendant could have shot Dubose for any number of reasons, including that Dubose refused to comply with defendant when defendant attempted to rob Dubose.") — and that the decision not to raise the defense was relegated to reasonable "trial strategy." *Hicks-Fields*, 2020 WL 7296826, at *3.

Under Michigan law, "[l]egal insanity is an affirmative defense requiring proof that, as a result of mental illness or being mentally retarded as defined in the mental health code, the defendant lacked 'substantial capacity either to appreciate the nature and quality or the wrongfulness of his or her conduct or conform his or her conduct to the requirements of the law.'" *People v. Carpenter*, 464 Mich. 223, 230-31; 627 N.W.2d 276, 280 (2001) (quoting Mich. Comp.

Laws § 768.21a(1)). "The defendant has the burden of proving the defense of insanity by a preponderance of the evidence." Mich. Comp. Laws § 768.21a(3).

Although Hicks-Fields cites a history of mental illness, he has not presented any evidence, either to the state courts, or to this Court, that he was legally insane at the time of the crime. That failure is fatal to his habeas claim. *See*, *e.g.*, *Sneed v. Johnson*, 600 F.3d 607, 611 (6th Cir. 2010). Michigan law holds that mental illness is a necessary, but not sufficient, requirement for an insanity defense. *People v. Ramsey*, 422 Mich. 500, 513, 375 N.W.2d 297, 302 (1985). Under this "continuum of mental functioning," *ibid.*, "[i]nsanity by definition is an extreme of mental illness," *People v. Fultz*, 111 Mich. App. 587, 590, 314 N.W.2d 702, 704 (1981). That is, "the statutes provide that all insane people are mentally ill but not all mentally ill people are insane." *Ibid.* Hicks-Fields fails to show that his mental illnesses might have fit Michigan's insanity definition. The record here is insufficient to support a conclusion that his attorney should have opted to take that strategic route.

One court has observed that "there is considerable empirical evidence that insanity pleas in and of themselves are not received favorably by jurors." *Weekley v. Jones*, 76 F.3d 1459, 1463 (8th Cir. 1996) (citing C. Boehnert, Characteristics of Successful and Unsuccessful Insanity Pleas, 13 Law and Human Behavior 31, 34, 36-37 (1989)). Since insanity or mental defenses are rarely successful, it was reasonable for counsel under the facts of this case to forego such a defense. *See*, *e.g.*, *Silva v. Woodford*, 279 F.3d 825, 851 (9th Cir. 2002); *see also Sneed*, 600 F.3d at 611 (holding that counsel was not ineffective by failing to present insanity defense where "the public's widespread skepticism of the insanity defense at the time of Sneed's trial in 1986 (*circa* the John Hinkley [sic] trial), indicate that this was not an attractive defense.").

Moreover, Hicks-Fields cannot demonstrate prejudice flowing from his lawyer's failure to raise his competency pretrial or the insanity defense. For the reasons discussed earlier, he cannot show that there is a reasonable probability that, but for counsel's failure to request an evaluation prior to or during trial or to interpose an insanity defense, the result of proceeding would have been different. *See United States v. Dubrule*, 822 F.3d 866, 881-82 (6th Cir. 2016). Counsel's failure to request a competency evaluation did not prejudice Hicks-Fields where a "reasonable judge, situated as was the trial judge was who presided over the case, would not have experienced doubt" about the petitioner's competency. *See Nemzek v. Jamrog*, 93 F. App'x 765, 766-67 (6th Cir. 2004). And based on this record, there is little chance that an insanity defense would have succeeded.

Hicks-Fields is not entitled to relief on his first allegation of ineffective assistance of counsel.

2.

Next, Hicks-Fields argues that defense counsel was ineffective by failing to object to witness Little's pretrial identification of him because it was impermissibly suggestive. Hicks-Fields argues that the pretrial identification was the result of a suggestive identification procedure because: (1) he was the only person with facial tattoos in the lineup; (2) he did not match Little's description of the shooter; (3) Little viewed other photographs of him, and (4) Little picked out two people as the shooter after two separate lineups.

The Michigan Court of Appeals reviewed and rejected these arguments, ultimately finding no fault with the identification procedures that undermined the reliability of Littles's trial testimony. It then held that Hicks-Fields could not establish that the lineup was highly suggestive,

and therefore he could not establish that his counsel was ineffective by failing to object to the procedure. *Hicks-Fields*, 2020 WL 7296826, at *3.

This holding did not contravene or unreasonably apply federal law. The Due Process Clause requires suppression of eyewitness identification evidence only "when law enforcement officers use an identification procedure that is both suggestive and unnecessary." *Perry v. New Hampshire*, 565 U.S. 228, 238-39 (2012) (quoting *Manson v. Braithwaite*, 432 U.S. 98, 114 (1977)). A pretrial identification procedure violates due process where: (1) the identification procedure is impermissibly suggestive; and (2) the suggestive procedure gives rise to a very substantial likelihood of misidentification. *Neil v. Biggers*, 409 U.S. 188, 197-98 (1972); *Manson*, 432 U.S. at 114 (holding that due process challenges to identification procedures are reviewed using the *Biggers* test). The evil to be avoided is that an initial improper identification procedure will result in misidentification at trial and will unduly influence later investigation. *United States v. Wade*, 388 U.S. 218, 229 (1967).

A criminal defendant has the initial burden of proving that an identification procedure used by law enforcement during the investigation was impermissibly suggestive. It is only after a defendant meets that burden that the court must require the state to prove that the identification was reliable, independent of the suggestive identification procedure. *Id.* at 240 n.31. If a defendant fails to show that the identification procedures were impermissibly suggestive, or if the totality of the circumstances indicates that the identification is otherwise reliable, no due process violation has occurred. As long as there is no substantial likelihood of misidentification, it is for the jury to determine the ultimate weight to be given to the identification. *See United States v. Hill*, 967 F.2d 226, 230 (6th Cir. 1992).

Even when there is undue suggestibility in a pretrial identification process, suppression is not called for if the in-court identification is reliable. "The factors affecting reliability include 'the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation.'" *Sexton v. Beaudreaux*, 585 U.S. 961, 966 (2018) (quoting *Manson*, 432 U.S. at 114); *see also Perry*, 565 U.S. at 239; *Biggers*, 409 U.S. at 199-200.

The Michigan Court of Appeals decided that the pretrial identification procedures did not present a substantial issue that undermined Hicks-Fields's due process rights. It found no fault with the array of photographs used because no pictures of the other lineup participants were available for review and Hicks-Fields presented no evidence that he was the only person with facial tattoos in the lineup, other than his affidavit, which could not be considered because it was not a part of the lower court record. *Hicks-Fields*, 2020 WL 7296826, at *3. Moreover, it concluded "that identification was not a key issue at defendant's trial because both Durham and O'Neal testified that defendant robbed and shot Dubose." *Ibid.* The court determined that even if defense counsel had successfully challenged the identification procedure used with Ms. Little, it would not have affected the outcome of the Hicks-Fields's trial. *Ibid.*

Hicks-Fields offered no evidence to the state courts or to this Court showing that he was the only person in the line-up with a tattoo. He failed to show that his lineup was unduly suggestive on this basis. The remaining three allegations by Hicks-Fields concerning the identification procedure go to the weight, not the admissibility, of Little's identification testimony. The fact that her identification of the perpetrator may have varied from Hicks-Fields's appearance or may have changed over time did not preclude the admissibility of her identification testimony. *See Pittao v.*

*Hoffner*, 722 F. App'x 474, 478 (6th Cir. 2018). Little testified that she was shown photographs of Hicks-Fields after she positively identified him in the line-up. *Hicks-Fields*, 2020 WL 7296826, at *3, n1. Her exposure to successive identification procedures of the petitioner did not render her identification of him inadmissible or unreliable. *See Williams v. Lavigne*, 209 F. App'x 506, 508 (6th Cir. 2006) (holding that the identification procedure, during which witness was shown several lineups and photo arrays, all of which contained defendant's picture, was not unduly suggestive). Finally, the fact that Ms. Little identified another suspect at a separate lineup would also go to the weight, and not the admissibility of her identification of Hicks-Fields as the suspect. A positive identification of a different suspect does not require the exclusion of an in-court or pretrial identification if the identification is otherwise reliable. *See Howard v. Bouchard*, 405 F.3d at 484 (collecting cases).

Because Hicks-Fields has not shown that the identification procedure used with Little was unduly suggestive, he failed to show that his lawyer was ineffective by not moving for suppression of Little's trial identification testimony. *Perkins v. McKee*, 411 F. App'x 822, 833 (6th Cir. 2011). Even if Hicks-Fields could establish deficient performance, constitutionally ineffective assistance is shown only when counsel's conduct deprives a defendant of a substantial defense. *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002). In this context, Hicks-Fields would have to show that the Michigan courts' findings both that the photo array was not unduly suggestive *and* that the procedure did not taint the in-court identification constituted unreasonable determinations of the facts. But that cannot be established here, because those conclusions easily fall within the realm of what fair-minded jurists could find from the evidence in this record. *See Searcy v. Berghuis*, 549 F. App'x 357, 364-65 (6th Cir. 2013). Because of the additional evidence against the petitioner in this case, namely, two accomplices who knew Hicks-Fields and who identified him as the

shooter, Hicks-Fields cannot demonstrate prejudice flowing from the admission of Littles's testimony. *See Riley v. Jones*, 476 F. Supp. 2d 696, 710 (E.D. Mich. 2007).

3.

Finally, Hicks-Fields argues that trial counsel was ineffective because he failed to move to suppress his statement to the police when he had invoked his right to counsel. The Michigan Court of Appeals rejected this claim because it determined that Hicks-Fields's statement during the interrogation, "Do I need a lawyer, bro?," did not amount to an unequivocal invocation of his right to counsel. Therefore, his lawyer did not perform deficiently by failing to challenge the admissibility of the statement. *People v. Hicks-Fields*, 2020 WL 7296826, at *4.

This decision faithfully tracked federal law. The Supreme Court has clearly established that under the Fifth Amendment, a suspect is guaranteed the right to remain silent and the right to the assistance of counsel during a custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 444-45 (1986). Once a suspect communicates "his desire to deal with the police only through counsel," he is "not subject to further interrogation by the authorities until counsel has been made available to him." *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981). When an invocation of the right to counsel is made, officers must cease questioning the suspect. *Smith v. Illinois*, 469 U.S. 91, 98 (1984).

However, "[i]n the context of invoking the *Miranda* right to counsel . . ., a suspect must do so 'unambiguously.'" *Berghuis v. Thompkins*, 560 U.S. 370, 381 (2010) (citing *Davis v. United States*, 512 U.S. 452, 459 (1994)). This requirement "results in an objective inquiry that 'avoid[s] difficulties of proof and . . . provide[s] guidance to officers' on how to proceed in the face of ambiguity." *Ibid*. (quoting *Davis*, 512 U.S. at 458-59). "[I]f a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances

would have understood only that the suspect might be invoking the right to counsel, our precedents do not require the cessation of questioning." *Davis*, 512 U.S. at 459. "[A] a statement either is such an assertion of the right to counsel or it is not." *Smith*, 469 U.S. at 97-98 (cleaned up).

The record supports the Michigan Court of Appeals's determination that Hicks-Fields did not unequivocally and unambiguously invoke his right to counsel. At the beginning of the interrogation, Hicks-Fields was read his *Miranda* rights from a written waiver form that he signed. His statement to the police "Do I need a lawyer, bro?" was too equivocal to invoke that right. His question was not answered, and the interrogation continued.

The court of appeals reasonably found that Hicks-Fields did not make an unequivocal and unambiguous request for counsel. Hicks-Fields's question whether he needed a lawyer can be interpreted as a question to the officers whether they thought he should have an attorney or that he was personally considering aloud whether he needed an attorney. A reasonable officer in these circumstances would not necessarily have interpreted Hicks-Fields's question as an invocation of the right to counsel. Under clearly established Supreme Court law, the officers were not required to answer his question or ask clarifying questions as to what Hicks-Fields meant. *Davis*, 512 U.S. at 459. The state courts' decisions are supported by the record and consistent with federal law. The petitioner is not entitled to relief under section 2254(d).

Because Hicks-Fields's statement to the police was not an unequivocal request for counsel, his effort to suppress his statement was doomed, and trial counsel was not ineffective by not objecting to the admission of Hicks-Fields's statement to the police. *Koras v. Robinson*, 123 F. App'x 207, 211 (6th Cir. 2005). The Michigan Court of Appeals did not unreasonably apply clearly established federal law by finding that Hicks-Fields did not actually invoke his right to

counsel because fairminded jurists could conclude that his statement was not an unambiguous request to speak with counsel. Hicks-Fields is not entitled to relief on this claim.

III.

None of the petitioner's claims present a basis to issue a writ of habeas corpus under 28 U.S.C. § 2254(d). The state courts' decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts. The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: March 31, 2025